(161 App. Div. 864)

DONNELLY v. H. C. & A. L. PIERCY CONTRACTING CO.

(Supreme Court, Appellate Division, First Department.  April 17, 1914.)

ANIMALS (§ 71*)—PERSONAL INJURIES—PROXIMATE CAUSE.

Defendant's driver, in delivering a typewriter at the offices of a railroad, left his horse without tying it, and was directed by a railroad employé to take it to a team gangway, which he did.  The horse moved to a different position alongside the railroad tracks, where it fell down. The station master aided it to regain its feet, and later a train came in on the track alongside it, whereupon it started to plunge; and, while the station master and another were attempting to control it and prevent it from plunging forward where employés and passengers were passing, the station master received injuries from which he died.  *Held,* that the proximate cause of the accident was not the act of the driver in leaving the horse unattended, but the act of the railroad employés, including de-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ceased, in leaving it after it fell at a place where it was likely to become frightened and injure some one.

[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 238–241; Dec. Dig. § 71.*]

Laughlin and Clarke, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Theresa M. Donnelly, as ancillary executrix of Frank Donnelly, deceased, against H. C. & A. I. Piercy Contracting Company. From a judgment on a verdict for plaintiff and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and HOTCHKISS, JJ.

Carl Schurz Petrasch, of New York City (Sidney L. Teven, of New York City, on the brief), for appellant.

Theodore B. Chancellor, of New York City, for respondent.

LAUGHLIN, J. This action is based on a statute of New Jersey, and is brought to recover the pecuniary loss sustained by the wife of Frank Donnelly, deceased, by his death, alleged to have been caused by the negligence of the defendant. The decedent was the general station master for the Delaware, Lackawanna & Western Railroad Company at its terminal at Hoboken, N. J., and on the 15th day of August, 1910, while endeavoring with the assistance of two others to control a horse owned by the defendant, and left by its driver unhitched and unattended on the premises of the railroad company in the vicinity of where its passengers were passing to and from trains, he received injuries which resulted in his death.

The appellant assigns three grounds for reversal: (1) That decedent was guilty of contributory negligence; (2) that no negligence on the part of the defendant was shown; and (3) that there were errors in the charge.

On the afternoon of the day in question the defendant sent one of its drivers from New York with a single horse and covered delivery wagon to deliver a Smith Premier typewriter to the offices of said railroad company at Hoboken for a demonstration, and to wait and bring it back after the demonstration. The driver appears to have known where the offices were, and as he drove off the driveway from the ferryboat he turned to the right and stopped near the foot of the stairs leading to the offices, and left the horse standing there, and carried the machine upstairs to the offices where it was destined, and when he returned to his horse and wagon he was notified by a man in a blue uniform with brass buttons, whom he took to be an employé of the railroad company, that the horse and wagon could not remain where they were, and he was directed to take them to a team gangway some distance to the left, between the ferry waiting room and a storeroom. He turned around and drove to the place to which he was directed to go, and stopped in the rear of a wagon, from which commissary supplies were being unloaded into the storeroom. This place was not in sight of any train, and, without locking or braking the wheels or hitch-

ing the horse, he left the horse, which was 15 or 16 years old, and had been driven by him for four or five years, and showed no evidence of restlessness, and was not supposed to be afraid of anything, and had customarily been left standing without hitching, standing there, and returned to the office where he had left the typewriter to see if it was ready to be removed. Finding that it was not, he came back to look after the horse, and returned to the office twice, and the last time remained away from 20 minutes to half an hour, according to his testimony, but evidently it was longer, and in the meantime the accident occurred.

The circumstances attending the accident are narrated by two eyewitnesses, and their testimony is to the same general effect. This testimony tends to show that the horse had moved forward some rods, turning to the right and around the ferry waiting room to the edge of the concourse over which passengers passed to and from trains, and there stood quietly for about 15 minutes, and then showed evidences of restlessness by stamping and moving about, and finally started forward toward the concourse, and locked one of the wheels around an iron column and was thrown down; that the decedent was repairing a baggage automobile in the vicinity, and he and one Pendergast, the ticket agent, went to the assistance of the horse, and after it regained its feet they quieted it, and the decedent resumed his work; that 5 or 10 minutes later a train known as "the shop train," with laborers, came in on a track alongside of the wagon and stopped with the engine immediately opposite the horse; that the horse thereupon started to rear and plunge and kick and threw itself down again; that the decedent, Pendergast and another attempted to control the horse, and, not succeeding in controlling it while it was down, they assisted it to its feet, and then the horse tried to plunge forward where hundreds of employés and passengers were passing, and while they were endeavoring to hold the horse back, it swerved to the right, and pinioned the decedent between the footboard of the wagon and an iron column supporting the roof over the concourse, inflicting injuries from which he died.

It is contended on behalf of the appellant that, inasmuch as the decedent was in charge of the premises, he was negligent in leaving the horse unhitched and unattended in close proximity to the track where this train was due to arrive shortly, and that he and the others were negligent in not holding the horse's head down the last time, instead of assisting the horse to its feet. It is true the decedent had sufficient authority to take charge of the horse and remove it from that place; but there is no evidence that he was aware of the fact that the horse had moved from the place where it had been left by the driver, and, on the assumption that decedent inferred as the jury might have found, that the driver left the horse there, the jury might well find that the decedent was justified in believing that the driver would take charge of the horse very soon, and that the horse would not have been left there if it would take fright from a locomotive or train. Negligence cannot be imputed to the decedent, as matter of law, for attempting to assist and control the horse the second time, for then the horse was threatening the safety of employés and passengers who, presumably,

were not aware of the danger; nor can it be held as matter of law that he was guilty of any contributory negligence.

The question of defendant's negligence was also one for the jury, for although the place where the horse was left was not a public street, it was a public place for the time being by the consent of the owner and by usage; and leaving a horse unattended and untied in such a place was evidence from which negligence might be inferred. See Norris v. Kohler, 41 N. Y. 42; Pearl v. Macauley, 6 App. Div. 70, 39 N. Y. Supp. 472; Manthey v. Rauenbuehler, 71 App. Div. 173, 75 N. Y. Supp. 714; Brand v. Borden's Condensed Milk Co., 89 App. Div. 188, 85 N. Y. Supp. 755. The two questions of negligence were therefore properly left to the jury.

I am of opinion, however, that the court erred in refusing to charge certain requests presented by appellant. By defendant's seventeenth request the court was asked to charge as follows:

"That if the jury find that the plaintiff's decedent, the station master, was negligent after learning of the nervous condition of the horse as stated by the witness Pendergast, during the hour which elapsed between the time when the horse first began to be nervous, to prance, and to evince a disposition to run away, in not removing the horse from its proximity to the railroad track upon which a train was due to arrive, or not tying said horse, or putting him in the charge or care of some competent person, and that this negligence contributed to decedent's injury, their verdict must be for the defendant."

The court declined so to charge, and modified the request, and instructed the jury that if—

"a prudent person, in the exercise of reasonable care, after learning of the nervous condition of the horse, as stated by the witness Pendergast, during the hour which elapsed between the time when the horse first began to be nervous, to prance, and evince a disposition to run away, in not removing the horse from its proximity to railroad tracks when the train was due to arrive, or not tying such horse, or putting him in the care of some person, and this negligence contributed to the decedent's injury, the verdict may be for the defendant."

Doubtless through inadvertence, something was omitted from the substituted charge, but it may be assumed that the jury understood that they were instructed that if a prudent person would have removed the horse in such circumstances, the decedent was negligent in not doing so. The court, however, in effect, left it discretionary with the jury whether or not to render a verdict for the defendant in that event. The jury should have been clearly instructed that the defendant was entitled to a verdict in the event that they so found. Ordinarily, of course, it would be assumed that the court so intended, but in the case at bar, the court refused to adopt the request presented by the defendant, which, by the use of the word "must," if charged, would have made it clear to the jury that it was their peremptory duty to render a verdict for the defendant if they found the facts recited therein, and substituted the word "*may*" in the charge as modified and given. It is possible that the learned court was of opinion that, even though the decedent was negligent in not removing the horse, still the jury might find that that was not a proximate cause of the accident, and would not bar a recovery; but that, I think, would be an erroneous view.

This error is emphasized by the fact that the court also refused to charge the defendant's eighteenth request, which was as follows:

"That if the jury find that a person exercising ordinary care in the position of the deceased station master would have removed the horse from the place where he stood in close proximity to the railroad tracks and to an incoming train, or would have tied him or put him in charge of some competent person, and that the station master failed to exercise this care, and that such failure on his part was negligence that contributed to his injury and death, their verdict must be for the defendant."

This request is in proper form, and embodies a correct proposition of law as applied to this case, and it should have been charged, for it was a vital point in the case, as is shown by the fact that the jury, after being sent out, returned and asked to have read certain of the evidence relating to the manner in which the horse acted when the decedent was first attracted to it. The exceptions to the refusal of the court to charge these two requests, therefore, present errors prejudicial to the defendant.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event.

CLARKE, J., concurs.

INGRAHAM, P. J. I concur in the reversal of this judgment, but upon the ground that the evidence is insufficient to sustain a finding that the death of plaintiff's intestate was caused by the defendant's negligence. The negligence for which the defendant has been held responsible is that of its driver in leaving a horse and wagon unattended in an alleyway or, as it is called, a "team gangway." This place was not a public street or a public place to which passengers were invited, nor was it in sight of any train, or in a position where leaving a horse unattended under ordinary circumstances could cause injury to any one. The horse and wagon were left there in obedience to an order from one of the railroad company's employés, and it was apparently a safe place in which to leave the horse. At any rate, leaving the horse in that position caused no injury to any one; but, after the horse had been left in this position for some length of time, he in some way wandered into a position alongside of the tracks of the railroad, and into a position in which it would be negligence to leave a horse unattended. There he was frightened and fell down, and in that position he was attended to by employés of the railroad company, who, instead of returning the horse to the place where he was first left, on securing him, left him unattended alongside the tracks, and in a position where incoming trains would be liable to frighten a horse. The horse again became restive when an incoming train approached, and again he fell down. Again the deceased, who was in the employ of the railroad company, endeavored to assist the horse to his feet, and while the horse was thus plunging and jumping, the deceased was thrown against a pillar, or some other obstacle, and received the injury which caused his death. The driver was waiting upstairs in the depot until the railroad company returned a typewriter that the driver of the cart had brought to the railroad company's offices.

It seems to me the proximate cause of the accident was the act of the deceased and his fellow employés in leaving the horse unattended in a position where, if frightened or unmanageable, he would cause injury to those upon the premises. The driver had nothing to do with leaving the horse in this position where the accident occurred, but it seems to have been the act of the deceased and other employés of the railroad company, and it was leaving the horse in this position after the first fall that caused the horse to become again unmanageable. Leaving the horse in such a position unattended was certainly negligence for which the driver would have been responsible if he has had to do with it. It seems to me that, if the employés of the railroad company wished to take charge of this horse, after he had wandered from the place where he had first been left by the driver, it was their duty to have led him away, or secured him in some place where he would not be unattended, and in a position to cause injury to those having to do with the railroad company's property. Leaving the horse in the position in which the driver left him was not the proximate cause of the accident which caused the decedent's death, but it was the act of the deceased and other employés of the railroad company, after the horse had wandered from the place where the driver left him, in leaving him in a place where he might do injury to others. If the horse had then run away and injured a passenger, the liability would be that of the railroad company, and not of the defendant, and that liability is not changed by the fact that the deceased was an employé of the railroad company and not a passenger. It seems to me there was not sufficient evidence that the negligence of the driver was the proximate cause of the accident to sustain the finding of the jury. For that reason I think the verdict was not sustained by the evidence, and the judgment should be for that reason reversed.

SCOTT and HOTCHKISS, JJ., concur.